Filed 4/22/13  P. v. Garcia CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>FIDEL GARCIA,<br><br>    Defendant and Appellant. | 2d Crim. No. B238859<br>(Super. Ct. No. 1355715)<br>(Santa Barbara County) |

Fidel Garcia appeals a judgment following conviction of first degree robbery, dissuading a witness from reporting a crime (two counts), and making criminal threats (two counts), with a finding that he acted in concert with others in committing residential robbery.  (Pen. Code, §§ 211, 136.1, subd. (b)(1), 422, 213, subd. (a)(1)(A).)[1]  We order the trial court to correct the abstract of judgment to reflect Garcia's conviction of first degree robbery, but otherwise affirm.

### FACTS AND PROCEDURAL HISTORY

In the evening of April 11, 2011, Jose and Maria Bernal were at home in Santa Maria.[2]  As Maria was speaking with her daughter Isela on the telephone, she heard a loud knock on the front door.  Jose opened the door and saw Garcia's mother.  He asked her purpose, and she stated, "[N]o, they're coming.  They're upset."

---

[1] All statutory references are to the Penal Code unless stated otherwise.

[2] We shall refer to the Bernals by their first names, not from disrespect, but to ease the reader's task.

Garcia, his mother, and Adam Byrd "pushed" Jose aside and entered the home. Garcia wore sunglasses and a bandana over his face; Byrd carried an aluminum baseball bat and assumed a "swinging" position with the bat. Maria was acquainted with Garcia and his mother because her daughter C. was friendly with Garcia.

Garcia approached Jose, pointed a knife at Jose's neck, and demanded that C. pay a $200 debt. Jose responded that C. was confined at juvenile hall. When Maria stated that she was calling for police emergency assistance, Garcia's mother took Maria's cellular telephone and bent it backwards.

Garcia then demanded to inspect C.'s bedroom. Jose accompanied him to C.'s bedroom where Garcia looked in the closet and stabbed the bedding with his knife because he believed that C. was hiding. When Garcia and Jose returned to the living room, Garcia pointed the knife near Jose's eye and stated: "If you don't pay me what your daughter owes, or if you speak about this to the police, you're dead, you and your family." Jose and Maria were frightened by Garcia's threats, and Maria was sobbing.

Jose and Byrd walked into Jose's bedroom where Jose obtained $200 in currency and gave it to Byrd. Garcia warned the Bernals that if they informed the police, he "was going to kill [Jose]" and later "kill [C.]" in their presence. Garcia also warned that he was associated with the "Black Hand."

In response to Isela's call requesting a check upon her parents' welfare, a Santa Maria police officer went to their residence and found the Bernals upset and "shaken up." About a block away, Police Officer Cassandra Stowasser saw Byrd running with a baseball bat. She detained and arrested him.

The jury convicted Garcia of first degree robbery, two counts of dissuading a witness from reporting a crime, and two counts of making criminal threats, and found that he acted in concert with others in committing the residential robbery. (§§ 211, 136.1, subd. (b)(1), 422, 213, subd. (a)(1)(A).) The trial court sentenced Garcia to a 10-year prison term pursuant to section 1170.15, consisting of six years for first degree robbery and two years for each count of dissuading a witness. The court stayed sentence on the two counts of making criminal threats pursuant to section 654, imposed a $3,600

2

restitution fine, a $3,600 parole revocation restitution fine (stayed), a $200 court security fee, and a $150 criminal conviction assessment, and awarded Garcia 250 days of presentence custody and conduct credit. (§§ 1202.4, subd. (b), 1202.45, 1465.8, subd. (a); Gov. Code, § 70373.)

Garcia appeals and contends that the trial court did not properly instruct regarding the elements of dissuading a witness and making criminal threats because it chose to "save some time" with "mix and match" instructions.

*DISCUSSION*

*I.*

Garcia asserts that the trial court instructed that the jury could convict him of intimidating a witness and making criminal threats if it found that either Jose or Maria had been intimidated or threatened, i.e., that the victims were interchangeable. He argues that the use of the word "or" allowed the jury to convict him without deciding whether he intimidated or threatened each victim. Garcia adds that the jury received written instructions (CALCRIM Nos. 1300 and 2622) containing the word "or" instead of "and." He contends that the error denied his federal and state constitutional rights to due process of law and to trial by jury, and is not harmless beyond a reasonable doubt. (*People v. Flood* (1998) 18 Cal.4th 470, 479-480 [instructional error relieving the prosecution of proving each element of an offense beyond a reasonable doubt violates a defendant's federal and state constitutional rights].)

The trial court instructed regarding the elements of intimidating a witness and stated that Garcia must have discouraged Jose *or* Maria from reporting the crime or seeking his arrest, and that Jose *or* Maria must have been crime witnesses or victims. The court also instructed concerning the elements of making a criminal threat and stated that the threat to Jose *or* Maria must be immediate and unequivocal, the threat must have caused Jose *or* Maria to be in sustained fear for their own safety or that of a family member, and that Jose's *or* Maria's fear was reasonable under the circumstances.

In reviewing claims of instructional error, we decide whether the defendant has shown a reasonable likelihood that the jury, considering the challenged instruction in

3

the context of the instructions as a whole, understood that instruction in a manner that violated his constitutional rights. (*People v. Tate* (2010) 49 Cal.4th 635, 696; *People v. Vang* (2009) 171 Cal.App.4th 1120, 1129.) We also presume that jurors generally understand and follow instructions. (*People v. Myles* (2012) 53 Cal.4th 1181, 1212.)

There is no reasonable likelihood that the jury misunderstood the instructions to permit them to convict Garcia without a unanimous agreement as to the particular victim dissuaded or threatened for each count. Viewed in context, the trial court's use of "or" in the instructions simply reflected that there was a count for each victim.

Moreover, the trial court instructed with CALCRIM No. 3515, regarding consideration of each count separately and a return of a separate verdict for each count. It also instructed with CALCRIM No. 3501, regarding unanimous agreement upon the particular acts constituting each offense. The verdict forms for counts 2, 3, 4, and 5 stated the name of the corresponding victim; counts 2 and 4 expressly concerned Jose, and counts 3 and 5 expressly concerned Maria, i.e., "We, the jury . . . , hereby find the Defendant . . . GUILTY of the crime of CRIMINAL THREATS, against Jose Bernal." (Count 4.) During summation, the prosecutor also stated that "Count[s] 2 and 3 are for each person, Jose and Maria Bernal respectively being intimidated or being threatened."

In addition, a jury note submitted to the trial court during deliberation questioned whether Garcia "ha[d] to directly address Maria in order to fulfill count #5." The jury also asked that Maria's testimony be reread and withdrew an earlier question regarding an explanation of criminal threats and "the choices between the family members." The jury notes reflect that it considered each victim separately for each charged count.

In sum, it is clear beyond a reasonable doubt that a rational jury would have found Garcia guilty beyond a reasonable doubt absent the asserted error in employing the word "or." (*People v. Gonzalez* (2012) 54 Cal.4th 643, 663 [standard of review].)

4

*II.*

The Attorney General points out that the abstract of judgment erroneously recites that Garcia was convicted of second degree robbery in count 1, not first degree robbery. The Attorney General is correct. (*People v. Andra* (2007) 156 Cal.App.4th 638, 642-643.)

The trial court shall amend the abstract of judgment to reflect a conviction in count 1 of first degree robbery, and then forward the certified amended abstract of judgment to the Department of Corrections and Rehabilitation. The judgment is otherwise affirmed.

NOT TO BE PUBLISHED.

GILBERT, P.J.

We concur:

YEGAN, J.

PERREN, J.

Kay Kuns, Judge

Superior Court County of Santa Barbara

_____

Susan Morrow Maxwell, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Linda C. Johnson, Supervising Deputy Attorney General, Gary A. Lieberman, Deputy Attorney General, for Plaintiff and Respondent.